364 So.2d 450 (1978)
FIRST AMENDMENT FOUNDATION OF FLORIDA, Inc., Appellant,
v.
STATE of Florida, Appellee.
No. 49745.
Supreme Court of Florida.
October 12, 1978.
Rehearing Denied December 12, 1978.
*451 David A. Demers of the Law Offices of Carreiro, Brawley, Demers & Demers, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
BOYD, Justice.
We are presented with an appeal from a judgment and sentence of the County Court for Pinellas County. As the trial court passed on the validity of a state statute, we have jurisdiction. Article V, Section 3(b)(1), Florida Constitution.
After entering pleas of nolo contendere, appellant First Amendment Foundation of Florida, Inc., was convicted, in a number of cases consolidated at the trial court level for purposes of judgment and sentence, of distributing obscene material in violation of Section 847.07, Florida Statutes (1975).[1] Each case was initiated by an information charging one or more violations. With some variation as to the precise conduct alleged to have been depicted, each count of each information alleged that on a certain date the appellant exhibited a certain motion picture film,
knowing the obscene nature thereof, said film considered as a whole, applying contemporary community standards, having its predominant appeal to the prurient interest, being utterly without redeeming social value, and going substantially beyond the customary limits of candor in representing nudity and sexual conduct in that said film graphically depicts and shows nude male and female persons actually engaging in ultimate sexual acts including but not limited to sexual intercourse, masturbation, fellatio, cunnilingus and ejaculation, contrary to Chapter 847.07, Florida Statutes, and against the peace and dignity of the State of Florida.
The appellant filed motions to dismiss each of the informations on the ground that Section 847.07 is impermissibly vague, giving insufficient definition of what is proscribed thereby denying appellant due process of law.
In connection with each count of each information the state filed a motion for an order to produce the subject film, pursuant to Section 847.08, Florida Statutes (1975). Each of these motions was accompanied by the affidavit of a police officer stating that he viewed the film and giving a detailed narrative and description of the contents of the film and the conduct depicted or represented therein. It was on the basis of these detailed affidavits relating to the contents of each film that each production order was entered. There is no indication that appellant was prevented from retaining copies, of the films ordered produced, for continued exhibition. Appellant objected to the motions for production orders, and moved to quash them once issued, on the ground that Section 847.08 is unconstitutional in that it *452 authorizes an unreasonable seizure without a prior probable cause determination by a neutral magistrate.
In the course of the proceedings that were had prior to the entry of the pleas of no contest, the state issued subpoenas for the taking of depositions directed to appellant's accountant and to the appellant's lawyer's secretary. The secretary was also the appellant's resident agent for service of process. Motions to quash these subpoenas were denied after hearing. The issues of privileged communication raised in these motions were dealt with further in hearings held on the state's motion to compel the testimony of the appellant's accountant. The privilege which the accountant and his client, the appellant, invoked was at that time provided for by Section 473.141, Florida Statutes (1975). The county court granted the state's motion and the accountant's deposition was taken in a deposition proceeding held before the county court judge with counsel for the witness and counsel for appellant present. The judge ruled on objections as they were made and ordered the witness to respond when he deemed it proper. The witness was compelled to answer certain questions that were ruled proper as not invading the area of the statutory privilege.
On May 19, 1976, appellant moved for permission to change its plea in each of the cases from not guilty to nolo contendere. The motion was granted. Appellant's counsel orally reserved the right to appeal all adverse rulings that had been made by the court. Appellant was adjudicated guilty on twenty-nine counts of distributing obscene material and was fined $1500 on each count. This appeal followed.

I.
Appellant contends that Section 847.07 fails to comply with the standards laid down in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), for definiteness in criminal statutes proscribing obscene publications. In Miller the test for the constitutionality of an obscenity law was stated as follows:
The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. 413 U.S. at 24, 93 S.Ct. at 2615 (citations omitted).
The third component of this test is of course inoperative under Section 847.07 which utilizes the stricter standard that the work, to be deemed obscene, must be "utterly without redeeming social value." The second component is the one that is crucial to our inquiry here. The United States Supreme Court made clear in Miller what its concern was:
State statutes designed to regulate obscene materials must be carefully limited. As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. 413 U.S. at 24, 93 S.Ct. at 2614 (citations omitted).
In State v. Aiuppa, 298 So.2d 391 (Fla. 1974), we considered the constitutionality of Section 847.07 under the standards of Miller. That is, we were faced with the question whether the statute specifically defines conduct the depiction or description of which shall be deemed to be obscene. We construed the statutory language  defining obscenity in terms of appeal to prurient interest  to refer to the depiction of certain conduct. And we held that the specific acts of sexual conduct the depiction of which was proscribed by the statute included intercourse, cunnilingus, sodomy and fellatio.
The Aiuppa decision stands for the further proposition that authoritative constructions that amplify an anti-obscenity statute that are in force (published) at the time of an obscenity offense apply to define obscenity  for purposes of notice of what is proscribed *453 and for purposes of instructing a jury  so that the judicial constructions may be considered in determining whether the statute meets Miller standards. This principle is also stated in Rhodes v. State, 283 So.2d 351 (Fla. 1973).
The Aiuppa rule of applicability of authoritative constructions in force at the time of the offense is applicable here. Aiuppa itself provides such an amplifying construction and was in force at the time of the commission of the obscenity offenses at issue now. The appellant clearly was put on notice that the films it exhibited depicted conduct reached by the statute. The types of ultimate sexual acts "specifically defined by the applicable state law, as written or authoritatively construed," Miller, above, include precisely those alleged in the informations to have been depicted in these films. The trial court judge was correct in upholding the statute against appellant's vagueness challenge.

II.
Section 847.08, Florida Statutes (1975), provides that after the filing of an indictment, information or "trial affidavit" charging a violation of Section 847.07, the state may apply to the court for
an order directing the defendant or his principal agent or bailee or other like person to produce the allegedly obscene materials at a time and place so designated by the court for the purpose of determining whether there is probable cause to believe said material is obscene.
Appellant contends that Section 847.08 is unconstitutional in that it authorizes the seizure of property without a warrant based on probable cause. A finding by a neutral magistrate that there is probable cause to believe materials to be obscene is necessary, appellant correctly argues, in order to avoid prior restraint on expression protected by the First Amendment. It is the Fourth Amendment that protects persons against unreasonable seizures, but prior restraint of the right of expression "calls for a higher hurdle in the evaluation of reasonableness." Roaden v. Kentucky, 413 U.S. 496, 504, 93 S.Ct. 2796, 2801, 37 L.Ed.2d 757, 765 (1973). Appellant's position is that the authorized procedure does not meet the constitutional standard governing such situations announced in Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). It was held there that a seizure of a film without a prior adversary hearing, for the purpose of preserving it as evidence, was permissible if executed under warrant issued after a probable cause determination by a neutral magistrate provided that afterwards a prompt judicial determination of obscenity was available and provided that copying was permitted if necessary to allow continued exhibition pending the judicial determination.
Appellant argues that since Section 847.08 states that the production order that is authorized is for the purpose of determining probable cause, it is therefore by definition not based upon probable cause. We observe, however, that the motions for the production orders that were issued in this case were accompanied by affidavits detailing the contents of the films. These affidavits described not only the conduct depicted, but gave a detailed narrative of the films in their entirety, thus enabling the court to determine the probable offensiveness of the presentation and the likelihood of the presence of redeeming social value. After the production order is issued, the statute provides for a further adversary hearing on the probable cause issue. Although the statute states that the production order is for the purpose of determining probable cause, the procedure followed in these cases assured that the orders themselves were based upon probable cause. A neutral, detached magistrate issued the orders after presentation to him of affidavits detailing the contents of the films. We construe the statute to require this procedure and hold that as so construed the statute complies with the standards of Heller. The production order, like a warrant for search or seizure, must be based on probable cause. We hold that these orders were so based. The trial court judge was correct in his rulings upholding the statute against appellant's First and Fourth Amendment attack.

*454 III.
Appellant also contends that the trial court erred in denying its motion to quash the subpoenas directed to appellant's accountant and appellant's attorney's secretary, and in granting the state's motion to compel. There is nothing in the record to show that any testimony was taken from the secretary. Although a Florida statute in effect at the time forbade compulsory testimony from accountants, Section 473.141, above, the trial court permitted the accountant's deposition to be taken in camera, holding that a properly limited examination was permissible. There is no basis upon which to conclude that this testimony was absolutely crucial to the state's case. Inasmuch as the issue is not "dispositive" of the case, it is not proper for consideration on appeal from a nolo contendere plea. Tiller v. State, 330 So.2d 792 (Fla. 1st DCA 1976).
The judgment and sentence appealed from are affirmed.
It is so ordered.
ENGLAND, C.J., and OVERTON, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
ADKINS, J., concurs in result only.
NOTES
[1] The offense and the meaning of "obscene materials" are defined in the first two subsections:

(1) A person commits the offense of distributing obscene materials when, knowing the obscene nature thereof, he sells, rents, leases, advertises, publishes, exhibits, or otherwise disseminates to any person any obscene material of any description, offers to do so, or possesses such material with the intent so to do.
(2) Considered as a whole and applying community standards, material is obscene if:
(a) Its predominant appeal is to prurient interest; that is, a shameful or morbid interest in nudity, sex, or excretion;
(b) It is utterly without redeeming social value; and
(c) In addition, it goes substantially beyond customary limits of candor in describing or representing such matters.